Case No. 18-5037, Bradley S. Waterman Appellant v. Internal Revenue Service. Ms. Glaberson for the Appellant, Ms. Wolfinger for the Appellant. Ms. Glaberson. Good morning, and may it please the Court, Stephanie Glaberson for the Appellant, Bradley Waterman. The key question in this case is whether there are segregable, factual allegations contained in the three withheld memos that can be disclosed to Mr. Waterman so that he can respond to these accusations that will haunt him for the next 25 years. The District Court didn't make any findings on segregability, did it? That's right, it did not. So what are we supposed to do then? So we asked this Court to resolve this case. But don't we have lots of cases that say, under de novo review, we have the power to do it, but for efficiency reasons, we just don't do that, and that's the job of the District Court. Well, we think for efficiency reasons that it's the most expedient. But I mean, first of all, isn't that what the cases say? The cases say that this is a pretty straightforward matter for us. We just remand it to the District Court and let them make the segregability determinations. Well, no. I think the case law says that this Court has the power to do a de novo review of the question. And under Ryan, even questions that were fully briefed below, and where, for instance, the IRS had the opportunity to fully air its position, that this Court has the power to reach those issues. And for that reason, we asked this Court to find that factual version. Remind me, in Ryan, did we do that? Did we make segregability determinations here? That was not a segregable – well, well – Well, can you find a case for me where we've actually exercised that power that we have, instead of remanding to the District Court to do it? Well, in Ryan, I'll qualify my previous statement. Because in Ryan, what the issue was, there was an Exemption 5 issue, as well as an issue about whether the records were agency records. And what the District Court had decided was that the records were not agency records and had disposed of the case in that way. But on appeal, this Court did reach the Exemption 5 issue and made findings. For instance, in that case, that certain factual portions would not be covered by the deliberative process privilege, and that any opinion on that would be withheld. That's a little different than what I'm asking. I'm asking whether the process of making the decision about segregability was handled – was done by us, instead of being sent to the District Court. I'm not aware of any instances. But I – maybe you are. I can't think of a case that's on point to that question in this moment. But I do think Ryan is instructive, and I – and I – I also think Mapather is instructive. In that case, this Court, in addition to the District Court, did an in-camera review of the records themselves. And we think here, where this issue has been fully aired – and this is a question of law, really, whether these factual – the factual portions of these memoranda are even covered by the privilege – that issue must be decided, and we think should be decided here in this Court. And we think the most expedient route would be, if there are questions about where these factual portions appear in these memos, and how expansive those portions are, and where – exactly which portions should be released, that this Court has the power to order the IRS to produce those records in-camera here for – just to review them quickly. There's only 21 pages in issue, and get this question over with. This case has been active for, I believe, two years now. These events, to the extent they occurred, they occurred five or six years ago at this point. And in the interest of justice, we argue that this Court should resolve this issue here. And really, the question is whether the IRS has even shown that these factual portions of these memos should be covered by the privilege. That's the first question that must be answered. And we submit that the IRS has not shown that through their declarations. And there are a couple of reasons. What is precisely – what precisely is wrong with their declarations? Right. So there's – I think there's a couple of things that their declarations do and don't do that fail to make their case. First is the rationale behind this protection of facts. Facts are protected under the Deliberative Process Privilege because we're interested in protecting the opinion. And in this case, what the declarations do is tell us what the opinions of these writers were. So it, in that way, obviates the need for the privilege. If you turn to the Joint Appendix, pages 42 through 45, on page 45, we have Ms. Rollins telling us that these writers were creating these records because they believed the referral for Mr. Waterman to be disciplined or disbarred was appropriate. In the explanation of suspected misconduct, which appears in the record on page 117, we have the recommendation for discipline or disbarment for these sanctions against Mr. Waterman appearing on that page. And that page references directly these memoranda, the Marchetti Memorandum and the Kelly Memorandum. So for that reason, we think that the declarations don't show that the application of the privilege is appropriate. And then also, what these declarations do is provide inconsistent accounts of what's included in these memoranda. What Ms. Rollins' declaration did is it separated the question of the Exemption 3 issue and the Exemption 5 issue and described the memoranda in two places, one on page 42 to 43 in the context of Exemption 3. And in that area said things like Ms. Kelly's memorandum summarizes a telephone conversation, that it described actions taken and statements made by Mr. Waterman in his capacity as his client's representative. That's on Joint Appendix page 43. But on page 45, as to that memorandum, she attempts to argue that it sets forth part of the factual basis that Ms. Kelly believed made the referral appropriate. She also says it was to record Mr. Waterman's statement. As to the Marchetti memo, we have even more statements that have tension with one another. On page 43, Ms. Rollins says that this memoranda summarizes Mr. Waterman's interactions with IRS personnel over a period of several months. And then on page 45, that this memorandum included a description of Mr. Waterman's actions and statements that Mr. Marchetti believed made the referral appropriate. As to the Brown memorandum, she says that it describes the basic fact pattern on page 43. And that on page 45, it was created particularly to summarize the facts alleged. So what those statements do is they tell us that there are factual portions included in these memoranda. And they create sort of a vague sense of what actually, how those factual portions appear within those documents and their intention with one another. And we believe that tension can really only be resolved through an in-camera review. And then the last thing that these declarations did that fails to make the IRS's case is that they don't say that there was any selection or exercise of judgment that would be revealed through the revelation of these facts. They don't give any sense for what process these writers went through in selecting, organizing facts. And in that way, what we're left with — Do they have to do that? I mean, when somebody's writing, when there's an investigation going on and someone's marshaling facts to describe whether punitive action should be taken or not, isn't the mere selection of those facts, doesn't that give us insight into the deliberative process? I worry about what agencies will look like, what agency counsel determinations will look like if your reading prevails. Don't you think it will have a chilling effect on the types of deliberative processes that the Act anticipates and encourages? So I think that answer, I can answer that in three parts. First is whether the mere selection is enough. And there are a couple of reasons why mere selection of facts is not enough to make factual accounts part of or protected by the deliberative process. And that dates all the way back to Sue C. D. David, where our whole line of cases sort of takes its inspiration from that case. And in that case, this court said that courts must be aware of the inevitable temptation of the government litigant to give the deliberative process privilege an expansive interpretation. And this court then picked that sentiment up again in Playboy Enterprises, saying that anyone making a report must, of necessity, select the facts to be mentioned in it, and particularly rejected that rationale for extending the protection of the deliberative process privilege to purely factual accounts. And then the other part of your question was about chilling. And in this case, there are a couple of reasons why we should not be concerned about how revealing these records would chill any discussion within the agency. And again, I go back to this point that we know what these writers' recommendations were. And so the fact that we already know, there is no opinion or recommendation wrapped up in these facts that hasn't already been revealed, that would be revealed through the revelation of these facts. But also, we have the structure in which these memoranda were created. They were written by their writers in advance of a process in which the IRS concedes that would that process have gone forward, these accounts would have been turned over. And not only that, but there is also regulatory structure making reports by IRS personnel mandatory. So for all of these reasons, we should not be concerned about chilling this type of government speech. We're not asking here for the opinion content or the recommendatory content that's included in these memoranda. Partly that's because this case is an outlier, and we already know what the content of those recommendations were. But also because the agency has not shown that the purely revealing sort of what they say he did, these factual accounts that are included in these memoranda, that that would in any way reveal an otherwise confidential decisional process. So for those... I have a question. On page 44 of your brief, you make what seems to me to be a good point, which is how can it be that there's no record that actually memorializes the decision not to punish the person immediately and instead to put it in a file for 25 years? The response in the government's brief in a footnote is, well, you're not challenging the validity of the search, so if there is such a record that's beyond the scope of this appeal, what's your answer to that? So we are not challenging the validity of the search here, but we do... To the extent there is a decision memorialized in one of these records, our point is that... Would there be a decision memorial... Are these records all from before the September letter? Yes. So in a long time. They're before the referral to OPR. So, yes, I believe the Kelly memo is in December. The Marchetti memo, I believe, is January. And right around that time, it's important to keep in mind that that is exactly the time during which the tax-exempt bond function had made its decision and that Mr. Waterman then had noticed his appeal. So these memos are all being created right at the time when he's starting this process to challenge the TEB's decision in his client's and the authorities' case. So they wouldn't memorialize the decision not to punish him, though, right? As far as we know, the only place that that decision appears is in this letter, which communicates the decision but doesn't memorialize it. The other documents are, I'm sorry, how much before that? So the September letter is dated September 10, 2014. What's the latest of the documents that you're challenging, the 20 pages? The Brown memo was dated August 26, 2014. So that's the memorandum that's most close in time to the communication of that September 10 letter. And so to the extent that that memorandum memorializes the decision that OPR then took to hold these records in this file to be used against Mr. Waterman at any time in the next quarter century, our point there is that to the extent that memorandum, for instance, includes not only a pure summary of facts, which is what the declarations say it includes, but also a decision that memorializes what the OPR eventually did here, that that also should be turned over, that that is not covered by the privilege. But the heart of our case really is that what Mr. Waterman needs here is what they say he did. He has the information that appears in the record, and it's raised more questions for him than it does answers. There's clear ways that what's included, for instance, in that explanation of suspected misconduct doesn't track with his reality. But the IRS has never said that what it's told him is the entire universe. That document references the Kelly memo. It references the Marchetti memo. And so for Mr. Waterman to adequately, meaningfully respond to these allegations, he needs to know what they're saying he did, what these records that are lurking in that file for the next 25 years contain. Any further questions? Thank you. Thank you. So, yes, we ask the Court to resolve this case and make those findings here. Good morning, Your Honors. Gretchen Wolfinger for the Internal Revenue Service. Judge Griffith, to address your initial question to opposing counsel, the government argued in its brief that the district judge did make a segregability finding. Starting at JA Joint Appendix 159 through 162, it discusses the legal framework for segregability and went on to discuss how those documents were, in fact, not segregable. I'm sorry, where is that? Start at JA 159. Where did it, where does he say they're not segregable? Although factual information, yes. And then on page JA 161, above the heading, the September and December 2013 memoranda fall squarely within the category of factual material protected. That doesn't say anything about segregability. From disclosure. Yes. The factual accounts contained, he's saying the factual accounts contained in the two memoranda fall squarely within the category of material protected from disclosure under Exemption 5 precedents. I read that to say he's saying that the factual material is inexplicably intertwined. Do you understand we've held specifically that a conclusory statement like that is not good enough? I don't believe it is conclusory, Your Honor. He discusses. Does he use the word segregability in there anywhere in that sentence? In fact, our opinions all italicize the word expressly with respect to segregability. Does he use the word segregability anywhere in that sentence? No, Your Honor. But I think if you look at starting at JA 159, he says, although factual information is often outside the bounds of Exemption 5 protections, the line between fact and agency, opinion or deliberation is not infallible and must not be applied mechanically. He's making a segregability analysis using your Court's precedents. That may be how you interpret his psychology, but he doesn't use the magic words that we require. So what's your next argument? The next argument would go to the Exemption 5 argument about the facts being inextricably intertwined with the deliberative process privilege. And this Court has held that the winnowing of fact is the essence of the deliberative process. Have we ever held that that is the case, that selection of facts, where we haven't also said the winnowing occurs from a vast number, a large number, a large universe of facts? This was a large universe of facts, Your Honor. Where is a affidavit that says this was a large universe of facts? I think it's based on the course of proceedings here. Waterman's representation occurred over approximately three years, yet what has been winnowed down is only the behavior, the actions, the statements, that the IRS believed implicated circular two. Is there an affidavit from anyone that says we looked at a large number, there were a large number of things and it was winnowed down to only a few? A large number of behaviors, a large number of facts? Well, let's put it this way. In Ancient Coin, we explain that in Montrose, the factual material, in Maypolder, factual material is assembled through an exercise of judgment in extracting pertinent material from a vast number of documents for the benefit of the official. And in Montrose, the factual summaries were culled by the committee, quote, from a much larger universe of facts presented to them, citing the Grayfield Declaration. Is there a declaration in this case? In Montrose summarized more than a 9,200-page record. Is there a declaration in this case that says anything like that? No, Your Honor. Again, I talk about the course of proceeding, but I would also say I don't, although those were the facts in Ancient Coin and Maypolder, I don't think that that's the way Exemption 5 should apply. It's entirely possible that a person could have committed one act that violated Circular 230, one statement, one action, that would have led to a deliberative process about whether they should or shouldn't, an investigation should or shouldn't be pursued. It's possible, but we began our line of cases with the proposition that factual statements are not protected. We made exceptions where there were large numbers of factual statements and selections were made. If we're now going to take the position that any even small culling of factual statements is protected, then we eliminate our original premise, which is that factual statements are protected. Now, maybe we should do that. But I'm asking you whether we need a new case in order to do that. Is there any precedent where we've said from a small number, from maybe only one thing, when the facts are stated in a memorandum? I'm not aware of that at this time, Your Honor, but that goes to the essence of the deliberative process privilege. But it may also go to the essence of the rule that factual statements are not protected. So we have to balance these two. I understand that, Your Honor. But then you would, what you're saying is you could conceivably be cutting out a large number of decisions that are based only on small numbers of facts. We've never had that. Apparently, there aren't a large number because we have no opinions that say it in the way that you're saying it. Let me ask you another question with respect to the Kelly memorandum, which reports summarizes a telephone conversation. Do you have any reason to believe that there's anything in there other than summarizing the telephone conversation? In other words, if a person speaks to an agent on the telephone, and the agent writes down a summary of what the person says, I don't understand how that should put in danger the deliberative privilege. Certainly the person speaking on the telephone to the agent knows that the agent is going to be writing down what is said. So the fact that it's later disclosed that the agent wrote down what was said should not make the agent fear writing down what should be said. Everybody expects the agent to write it down. Why is this not just a statement of facts? My understanding that this was an internal telephone conversation. It wasn't. Summarizing a telephone conversation held on the date with Waterman, with the outsider. Not an internal conversation. I see what you're saying, Your Honor. But summarizing the facts with the Circular 230 issue in mind. Well, how do we know it's with the Circular 230 issue in mind? This is considerably earlier than that event, isn't it? Earlier than the OPR recommendation, isn't it? Earlier than some of the. What's the date of it? I'll have to check, Your Honor, on the, I'll look at the Vaughn index. I'm looking at the same one. I don't see a date. I'm sorry. It was the telephone conversation. Yes. It's a J.O. 51. Oh, J.A. 51. I don't know. I can't find a date on it. Isn't this one of the documents we're talking about? Yes, it's December 23rd, 2013. Uh-huh. So that's later than, for example, the memorandum. I'm sorry. That's later than the September letter? Beneath it, there's a memorandum dated September 10th, 2013. So it's after that, from Marchetti to Chelsea Kelly. So it's after that memorandum. So I don't understand. So this is after the September letter? Is that what you're saying? According to the Vaughn index, J.A. 51, there's a memorandum dated September 10th, 2013 from Mike Marchetti. Right. But the September letter in which the decision is made, or at least communicated, is 2014. Right. September 10th, 2014. Yes. So this is almost a year before. Yes. Yeah. And you're saying that they already knew at that time that there was going to be a problem? Yes. Apparently from this Vaughn index. Yes. Apparently from the law? Yes. So that's – if all – are you saying that you think there is more in this summary than just the facts of what the person said? Like they left out some things and they only included the things that would hurt the guy? Is that what you're saying? Or it was used as the basis for further action. Yes. Well, that may be the case. But the fact that it was used wouldn't be reflected by stating what Mr. Waterman said to them. It's just a fact statement. Mr. Waterman made certain statements, which apparently Mr. Waterman knows he made. Right. And which the agent believes supported a Circular 230. Were there other statements that Mr. Waterman made?  I do not know. All right. Are there other questions from the panel? Thank you. Thank you. Is there any time left? We'll give you one more minute. Okay, we're good, bye. So, if there are no further questions generated by counsel's argument, we just, we ask the court to decide, the exemption 5 issue, decide that these factual accounts are not covered, and to the extent there is a remand, to remand solely for that segregability finding and to ensure that those factual accounts be disclosed. Thank you. All right, thank you. We'll take the matter under submission. Oh, yeah, yeah. We want to thank you very much for your service on this. Thank you.
judges: Garland, Griffith, Wilkins